J-A04004-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JOHN DUKES, JR. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| COMMUNITY TRANSIT OF DELAWARE | : | No. 1142 EDA 2018 |
| COUNTY AND RAYMOND M. GALLO | : | |

Appeal from the Judgment Entered April 2, 2018
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 160902860

BEFORE:  LAZARUS, J., KUNSELMAN, J., and COLINS, J.*

MEMORANDUM BY LAZARUS, J.:                    **FILED MARCH 05, 2019**

John Dukes, Jr., appeals from the judgment, entered in the Court of Common Pleas of Philadelphia, after a jury entered a verdict in his favor against Appellees, Community Transit of Delaware County ("Community Transit") and Raymond M. Gallo (collectively, "Defendants").  Upon careful review, we affirm.

On September 28, 2014, Dukes was stopped at a traffic light on Baltimore Pike in Springfield, Delaware County, when his vehicle was rear-ended by a bus owned by Community Transit and operated by Gallo.  As a result of being thrown "back and forth within the vehicle," Dukes suffered pain in his neck, back, right arm and hand, left arm, and right leg.  Brief of Appellant, at 6.

_____

*Retired Senior Judge assigned to the Superior Court.

At the time of the accident, Dukes had a 23-year-old severely autistic son who enjoyed playing baseball. Dukes and his son regularly played catch together and participated in a local baseball league. Because of his injuries, however, Dukes was unable to participate in these activities with his son following the accident. In July 2016, Dukes' son unexpectedly passed away.[1]

Dukes filed a complaint against the Defendants on September 25, 2016, alleging negligence and asserting claims for, *inter alia*, emotional distress and loss of life's pleasures. At trial, the parties stipulated that Gallo was negligent and caused the accident and that he was acting as the agent and employee of Community Transit at the time. Thus, the only issue for trial was the amount of damages, if any, to which Dukes was entitled.

On December 8, 2017, a jury awarded Dukes the sum of $50,000 in damages. Dukes filed a timely post-trial motion on December 13, 2017, in which he raised multiple issues concerning the trial court's failure to permit him to testify regarding the nature and extent of his son's disability, his relationship with his son, and the impact of his injuries on that relationship. Dukes claimed that the preclusion of that evidence resulted in an "unreasonably low" verdict. Motion for Post-Trial Relief, 12/13/17, at ¶ 7.

By order dated March 28, 2018, the trial court denied Dukes' post-trial motion and entered judgment against Defendants in the amount of $50,423.15, representing the jury's verdict of $50,000 and delay damages of

_____

[1] His death was completely unrelated to Dukes' accident.

$423.15. Dukes filed a timely notice of appeal, followed by a court-ordered statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). He raises the following issue for our review:

> Whether the [trial] [c]ourt abused its discretion when it precluded Mr. Dukes from introducing evidence that his son suffered from severe autism and that he passed away just a year and a half after the accident, where that evidence was directly relevant to his damages for loss of the ability to enjoy life's pleasures?

Brief of Appellant, at 5.

"The admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law." **B.K. v. J.K.**, 823 A.2d 987, 991–92 (Pa. Super. 2003). An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused. **Sutherland v. Monongahela Valley Hosp.**, 856 A.2d 55, 59 (Pa. Super. 2004). Moreover, "[t]o constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." **Hawkey v. Peirsel**, 869 A.2d 983, 989 (Pa. Super. 2005).

> Pennsylvania trial judges enjoy broad discretion regarding the admissibility of potentially misleading and confusing evidence. Relevance is a threshold consideration in determining the admissibility of evidence. [**See** Pa.R.E. 402.] A trial court may,

however, properly exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice. [**See** Pa.R.E. 403.] Generally[,] prejudice means an undue tendency to suggest a decision on an improper basis.

**Braun v. Target Corp.**, 983 A.2d 752, 760 (Pa. Super. 2009). "The function of the trial court is to balance the alleged prejudicial effect of the evidence against its probative value and it is not for an appellate court to usurp that function." **Parr v. Ford Motor Co.**, 109 A.3d 682, 696 (Pa. Super. 2014) (en banc)

Here, Dukes sought to introduce testimony regarding the fact that his son was autistic and passed away approximately a year and a half after the accident. Counsel argued that Dukes' "need to be away from home and away from his son for treatment, therapy, and so forth [as a result of his injuries sustained in the accident], deprived [Dukes] of the enjoyment of life in that he could [not] interact with his son in the last months of his life." N.T. Trial, 12/5/17, at 28. The trial court ruled that Dukes could testify that his son had "limitations," but could not mention the word "autism," reasoning that reference to the disorder was "likely to raise issues of sympathy that are not relevant to the case." N.T. Trial, 12/6/17, at 10. The trial court also allowed Dukes to testify regarding the activities he was accustomed to doing with his son, including playing baseball and shaving him, over approximately four pages of testimony.[2] However, the trial did not allow Dukes to testify that his

---

[2] Regardless of his son's specific diagnosis, Dukes' testimony illustrated to the jury that his son was seriously disabled.

- 4 -

son passed away approximately a year and a half after the accident. Again, the court concluded that evidence of the son's death would be "unfairly prejudicial because it had 'a tendency to suggest [a] decision on an improper basis or divert the jury's attention away from its duty of weighing the evidence impartially.'" Trial Court Opinion, 8/8/18, at 15, quoting **Parr**, 109 A.3d at 696.

The trial court also noted the retroactive nature of Dukes' claim regarding the loss of life's pleasures related to his son's death. During the time he was unable to play baseball or otherwise spend sufficient time with his son, Dukes was unaware that his son would die in the near future. Accordingly, Dukes' loss of life's pleasures as related specifically to his son's untimely death were only experienced "in memories after his son died[,] when [Dukes,] in hindsight[,] regretted that he had not spent more time with his son in his last year and a half of life."[3] Trial Court Opinion, 8/8/18, at 17 (emphasis omitted). The trial court concluded that:

_____

[3] Dukes was allowed to present substantial testimony regarding the manner in which his injuries affected his relationship with his son _while his son was alive_. Dukes testified that he had been actively involved in assisting his son up until the day of the accident, **see** N.T. Trial, 12/6/17, at 69; that he and his son enjoyed playing baseball and catch and that, after the accident, Dukes was no longer able to play catch, **see id.** at 69-71; and that, after the accident, he could no longer participate in the nightly ritual of shaving his son, **see id.** at 71. When asked whether there were "any other things that [he] couldn't do with [his] son as far as his limitations," **id.**, Dukes responded "No, just basically baseball." **Id.** Finally, throughout his testimony, both counsel and Dukes referred to his son in the past tense, which would have clearly signaled to the jury that he was no longer alive, despite the trial court's ruling that his death could not specifically be referenced.

Dukes experienced two distinct emotional injuries, only the first of which is compensable in this case. The first was the loss of life's pleasures that resulted from the physical injuries he sustained in the bus accident. He fully testified how he was unable to play baseball with his son and the loss he felt as a result. The jury was instructed that loss of life's pleasures resulting from a physical trauma was compensable. The jury returned a verdict in his favor and awarded him damages.

The second distinct injury [Dukes] sustained was the emotional distress caused by the unexpected death of his son one-and-one-half years after the bus accident. His son's death caused [Duke], in hindsight, to regret not spending more time with his son in the last years of his life. . . . Those regrets and memories are not compensable in this case because they were caused by a new and distinct trauma—his son's unexpected death—for which the Defendants bear no responsibility. [Dukes] was not entitled to be compensated for his regrets over the loss he felt from the unexpected and unrelated death of his son which he experienced in memories that arose only after his son died.

*Id.* at 18-19. The trial court aptly discerned that the testimony Dukes sought to admit did not constitute evidence of damages resulting from the accident, but rather a plea for *solatium*, which

describes a type of monetary damages awarded the decedent's survivors to recompense them for their feelings of anguish, bereavement, and grief caused by the fact of the decedent's death. Although most civil law nations provide such damages for the bereaved relatives, it has been steadfastly rejected by the common law.

*Sinn v. Burd*, 404 A.2d 672, 675 n.3 (Pa. 1979).

Upon review of the certified record, the briefs submitted by the parties, and the relevant law, we conclude that the excellent opinion authored by the Honorable Marlene F. Lachman cogently, thoroughly, and correctly disposes of Dukes' claim on appeal. In particular, we agree with Judge Lachman's

conclusion that the evidence Duke sought to admit was likely to cause unfair prejudice to the Defendants by eliciting sympathy for Dukes and was, as such, inadmissible. Accordingly, we affirm on the basis of Judge Lachman's opinion and instruct the parties to attach a copy of that opinion in the event of further proceedings.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/5/19